WITHOFT v. WESTERN MEAT CO. et al.

In re STONE CANON MERCANTILE CO.

(District Court, N. D. California, First Division. February 11, 1913.)

BANKRUPTCY (§ 287*)—SUIT BY TRUSTEE—CONVERSION OF PROPERTY BY CREDITOR.

　　Defendant, a creditor of bankrupt, assigned its account for collection to a commercial agency which brought suit thereon in its own name, and attached a stock of goods, and, after the bankruptcy, the goods were sold by the sheriff and the money applied in payment of the judgment. Defendant retained the beneficial ownership of the claim and was advised with prior to the sale and authorized the same. *Held*, that it was not protected by the fact that the suit was in the name of another, but was liable for conversion to the trustee of the bankrupt.

　　[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 444–447; Dec. Dig. § 287.*]

At Law. Action by T. W. Withoft, trustee in bankruptcy of the Stone Canon Mercantile Company, against the Western Meat Company and others. Judgment for plaintiff.

The suit was brought by the plaintiff to recover damages for the alleged conversion of a stock of goods belonging to the bankrupt. The Western Meat Company had assigned to the San Francisco Commercial Agency, for collection, its claim against the bankrupt, and thereupon the Commercial Agency commenced a suit in which the property of the bankrupt was attached, and thereafter sold by the sheriff to satisfy the judgment therein obtained.

Jos. Kirk and J. P. Keleher, both of San Francisco, Cal., for plaintiff.

Perry & Perry, of San Francisco, Cal., for defendant San Francisco Commercial Agency.

William P. Humphreys, of San Francisco, Cal., for defendant Western Meat Co.

DIETRICH, District Judge. Such defense as is put forward on behalf of the San Francisco Commercial Agency and the sheriff is necessarily involved in that of the Western Meat Company, and I need therefore refer only to the contentions urged by this last-named, and perhaps principal, defendant. Upon its behalf it is argued: (1) That it is without any liability whatsoever; and (2) that the value of the property seized and sold was comparatively small.

As to the first proposition, I am unable to escape the conclusion that Perry did not direct the sheriff to proceed with the sale until after he had laid the facts before the meat company's general attorney, and had been expressly authorized by him to take the course which was finally pursued. While there is little direct or positive evidence upon the point, the circumstances of the case leave little room for doubt that the managing officers of the meat company, with knowledge of the pendency of the bankruptcy proceeding, for the purpose of securing the payment of its claim in full, concluded to assume the risk involved, and expressly authorized Perry to proceed.

But even if we put aside such a view of the record, the defendant must still be held to be liable. That it turned this claim over for collection and authorized the attachment suit to be brought is not denied; nor does it seriously contend that it sold the claim or parted with control thereof. The suit was brought in the name of the commercial agency as a mere matter of convenience; the real beneficial ownership remaining in the meat company. It is not very material whether the commercial agency was a real, substantial corporation, or a mere "dummy." In the latter alternative it was nothing more than Perry doing business in the name of, and as, the San Francisco Commercial Agency; in the former, it was a corporation acting through Perry, its managing officer. So that, whether, as was testified to by one of the meat company's representatives, the claim was turned over to the agency for collection, or, as another one stated, it was turned over to Perry, it is clear that the meat company fully understood that the claim was in fact in Perry's hands for enforcement, and it is bound by what he did, within the apparent scope of his authority. If, in the interest of convenience and economy, the courts go so far as to recognize the right of a naked assignee of the legal title of a claim to maintain suit thereon, they certainly should not, and will not, permit the expedient to be turned into a means for the perpetration of fraud. The suit was in fact by and upon behalf of the meat company, although in the name of the commercial agency, and, having expected to receive, and having in fact received, the benefits of the enterprise, it must also be held to have assumed the hazards and must bear the losses thereof. To yield to its present contention would be to establish a most pernicious prec-

edent, and open wide the door for the most flagrant frauds upon the bankruptcy law.

Touching the value of the stock seized and sold, unfortunately the evidence is not entirely satisfactory. The most definite information comes from the plaintiff's witness Bevans, but it is not conclusive. The conversion of the goods did not take place as of the date of the attachment, for no wrong was committed by the meat company in bringing suit and causing the property to be attached. If, upon the commencement of the bankruptcy proceeding, the sheriff had abandoned the property, or if, upon the appointment of the trustee, he had turned it over, no one of the defendants would be chargeable with any wrongdoing. The wrong consisted in the denial of the superior right of the bankruptcy court, and the sale of the goods in defiance of such right. The value of the property is therefore to be measured as of about the time the sheriff's sale took place. No good purpose would be subserved by an attempt to discuss the testimony in detail so far as it bears upon the question of value, and I simply state the conclusion which I have reached, namely, that the goods at the time of their conversion were of the reasonable value of $5,138.21. As I understand, the sheriff has paid over to the trustee $408.21; the same being the net balance remaining in his hands after paying the claim involved in, and the expenses of, the attachment suit. Deducting this amount from the $5,138.21, there is left a balance of $4,730, which amount, together with interest thereon at the legal rate from February 3, 1910, the plaintiff is entitled to recover from the defendants. The interest should be calculated up to the date of the judgment, and the amount thereof added to the principal sum. Such judgment will, of course, carry interest from its date at the legal rate, and costs.